IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 12-418-5 |
| FRANK THOMPSON : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                     **December 4, 2014**

Defendant Frank Thompson objects to his classification in the Presentence Investigation Report (PSR) as a career offender under the Federal Sentencing Guidelines. Whether Thompson can properly be classified as a career offender turns on whether his 2004 state court conviction for criminal conspiracy qualifies as a conviction of a crime of violence within the meaning of the career offender guideline.[1] The status of the 2004 conviction, in turn, depends on the object of the conspiracy: if the object of the conspiracy was a crime of violence, then the conspiracy conviction is a conviction of a crime of violence. Because it is apparent from the verdict report and jury instructions in the 2004 criminal case that Thompson was convicted of conspiracy to commit a crime of violence, this Court finds Thompson qualifies as a career offender, and his objection is therefore overruled.

---

[1] It is undisputed that Thompson satisfies the first two elements of the career offender test, i.e., he was over the age of eighteen when he committed the offenses at issue in this case, and the offenses of conviction include both crimes of violence and controlled substance offenses. *See* U.S.S.G. § 4B1.1(a)(1), (2). As to the third element—that the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense," *id.* § 4B1.1(a)(3)—it is undisputed that Thompson has at least one such conviction, as his 2009 state court conviction for manufacturing, delivering, or possessing with intent to deliver a controlled substance qualifies as a prior felony conviction of a controlled substance offense. The only question, therefore, is whether Thompson's 2004 conviction qualifies as a second predicate conviction.

Thompson incurred the 2004 conviction following a jury trial in the Philadelphia Court of Common Pleas on five charges arising out of the same January 14, 2004, incident: (1) robbery, (2) burglary, (3) carrying firearms on public streets or public property, (4) simple assault, and (5) criminal conspiracy.[2] Gov't's Trial Ex. 90; Gov't's Supplemental Sentencing Mem. Ex. E (hereinafter Verdict Report). The robbery, burglary, and criminal conspiracy charges were graded as first-degree felonies; the firearms and assault charges were misdemeanors. The jury convicted Thompson of the conspiracy charge, was unable to reach a verdict on the burglary charge, and acquitted him of the three remaining charges (robbery, carrying firearms, and simple assault). Thompson was eventually acquitted of the burglary charge following a retrial on that charge in June 2005.

> For purposes of the career offender guideline, a crime of violence is
>
> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). A crime of violence includes the offenses of "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling," and also "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit [a crime of violence]." *Id.* cmt. n.1.

---

[2] Thompson was also charged with other offenses arising out of a separate March 26, 2004, incident involving the same victim as the January 14, 2004, incident. Thompson was tried on the charges relating to both incidents in the same May 2004 trial, but was acquitted of all charges relating to the later incident.

Thompson was convicted under Pennsylvania's criminal conspiracy statute, which defines the offense of conspiracy as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa. Cons. Stat. § 903(a). To obtain a conspiracy conviction, "an overt act in pursuance of such conspiracy [must be] alleged and proved to have been done by [the defendant] or by a person with whom he conspired." *Id.* § 903(e).

To determine whether a prior conviction qualifies as a conviction of a crime of violence, a district court must ordinarily apply the so-called "categorical approach," looking only to the elements of the statute forming the basis of the conviction and determining whether the statutory offense meets the Guidelines' definition. *See United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014). When the statute of conviction is divisible in that it "sets out one or more elements of the offense in the alternative," and thus "comprises multiple, alternative versions of the crime," however, a court may apply a modified categorical approach. *Descamps v. United States*, 133 S. Ct. 2276, 2281, 2284 (2013). The modified approach allows the court to "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction" so that the court can then apply the categorical approach to the particular version of the crime of which the defendant was convicted. *See id.* at 2281, 2285.

The Government concedes that under the categorical approach, Thompson's criminal conspiracy conviction would not qualify as a conviction of a crime of violence. As the

Government acknowledges, because the statute applies to conspiracies to commit any underlying crime, it plainly could be violated in ways that would neither involve the use, attempted use, or threatened use of physical force, nor present a serious potential risk of physical injury to another, depending on the particular underlying crime involved.

Although criminal conspiracy is not a crime of violence under the categorical approach, the Court agrees with the Government that the criminal conspiracy statute is divisible and it is appropriate to apply the modified categorical approach in this case. On its face, the criminal conspiracy statute requires that there be another crime that is the object of the conspiracy, and the grading of a conspiracy offense depends on the underlying criminal objective. *See* 18 Pa. Cons. Stat. § 905(a) (providing conspiracy is generally a "crime[] of the same grade and degree as the most serious offense which is . . . an object of the conspiracy"). As the Third Circuit has recognized, Pennsylvania law requires the prosecution in a criminal conspiracy case to "show that a specific crime was the object of the conspiracy," and "the crime that was the object of the conspiracy must be defined for the jury." *United States v. Preston*, 910 F.2d 81, 86 (3d Cir. 1990). In these circumstances, the criminal conspiracy statute may be regarded as comprising multiple, alternative versions of the offense based on the particular underlying crime that is the object of the conspiracy. *See United States v. Trent*, 767 F.3d 1046, 1057 (10th Cir. 2014) (holding a similarly worded Oklahoma conspiracy statute was divisible because by prohibiting conspiracies to commit any crime, the statute cross-referenced all state criminal offenses and thus "la[id] out 'multiple, alternative versions of the crime' of conspiracy, according to what underlying crime provides the conspiracy's object" (quoting *Descamps*, 133 S. Ct. at 2284)); *see also United States v. Gibbs*, 656 F.3d 180, 184, 187 (3d Cir. 2011) (holding a Delaware statute prohibiting "wear[ing] body armor during the commission of a felony" was divisible because by

4

leaving the term felony undefined, the statute "incorporate[d] by reference the disjunctive list of all felonies" (first alteration in original) (citation omitted)).[3]

Because the conspiracy statute is divisible, the Court may look to "a limited class of extra-statutory documents to determine which version of the offense was the basis of conviction." *Brown*, 765 F.3d at 189. The Court may consider "charging documents, . . . jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010). If the crime that was the object of the conspiracy is a crime of violence, then the conspiracy conviction is a conviction for a crime of violence. *See United States v. Smith*, 256 F. App'x 497, 500-01 (3d Cir. 2007); U.S.S.G. § 4B1.2 cmt. n.1 (providing a crime of violence includes the offense of conspiring to commit a crime of violence).

The Information for the conspiracy charge lists the object of the conspiracy as "robbery, assault etc.," Gov't's Trial Ex. 90, suggesting the jury could have convicted Thompson of conspiring to commit any of the four underlying offenses charged, not all of which are crimes of violence. The jury instructions regarding the conspiracy charge also did not expressly limit the

---

[3] Because a jury must agree on the particular crime or crimes that were the object of the conspiracy to convict a defendant of criminal conspiracy under the Pennsylvania law, the object offense may be considered an element of the conspiracy. *See Preston*, 910 F.2d at 86 (holding that under Pennsylvania law, the elements of criminal conspiracy to commit a particular offense "subsume" the elements of the offense that is the object of the conspiracy); *Commonwealth v. Jacobs*, 39 A.3d 977, 980 (Pa. 2012) (holding § 903(a) requires jurors to agree on "the same object of the crime [of conspiracy]"); *cf. Trent*, 767 F.3d at 1061-62 (holding the object of the conspiracy is an element of the offense of criminal conspiracy under Oklahoma law because "an Oklahoma jury must agree unanimously on the crime the defendant has conspired to commit"). The Pennsylvania criminal conspiracy statute is thus distinguishable from the hypothetical indivisible assault statute the Supreme Court posited in *Descamps*. *See* 133 S. Ct. at 2290 (considering a hypothetical statute prohibiting assault with a weapon, which qualified as a violent felony only when the weapon used was a gun, and explaining the statute would be indivisible, thus rendering the modified categorical approach inapplicable, because to convict a defendant, the jurors would not need to agree on the particular weapon used, as the statute requires the jury to find only use of an indeterminate weapon).

jury to a particular criminal objective. Rather, the trial judge instructed the jury that to convict Thompson of criminal conspiracy, it would have to find "that there was intent to commit a crime," further explaining "the charges I define," i.e., the other charges against Thompson, "are crimes under our criminal code." Gov't's Second Supplemental Sentencing Mem. Ex. D (hereinafter Jury Instructions), at 54. The verdict report, however, reflects that Thompson's criminal conspiracy conviction was for a first-degree felony, *see* Verdict Report, and thus makes clear the jury must have found the object of the conspiracy was also a first-degree felony, *see* 18 Pa. Cons. Stat. § 905(a). Of the possible criminal objectives on which the jury was instructed, only robbery and burglary were charged as first-degree felonies; therefore, it is apparent from the verdict report that the jury must have found the object of the conspiracy was robbery or burglary.

Further, although neither the Information nor the jury instructions for the criminal conspiracy charge expressly limited the object of the conspiracy to any particular crime or crimes, these materials establish that the statutorily required "overt act in pursuance of [the] conspiracy," 18 Pa. Cons. Stat. § 903(e), was "demand[ing] money at gunpoint," *see* Gov't's Trial Ex. 90 (Information); Jury Instructions 56-57 (instructing the jury that "no person may be convicted of a conspiracy unless an overt and visible act in pursuance of the conspiracy is alleged to have been proven," and stating "[i]n this case the Commonwealth alleges the overt and visible act is demand[ing] money at gunpoint"). The Government argues the overt act charged makes clear that the jury must have found the object of the conspiracy was robbery because demanding money at gunpoint "satisfies the robbery statute, but not the burglary statute." Gov't's Second Supplemental Sentencing Mem. 2. Thompson disputes that the overt act establishes the crime that was the object of the conspiracy. The Court need not resolve the

parties' dispute on this issue, as regardless of whether Thompson was convicted of conspiracy to commit robbery or burglary, the conviction was for a crime of violence.[4]

The version of the Pennsylvania robbery statute in effect at the time of Thompson's conviction provided:

> A person is guilty of robbery if, in the course of committing a theft, he:
>     (i) inflicts serious bodily injury upon another;
>     (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; [or]
>     (iii) commits or threatens immediately to commit any felony of the first or second degree.

18 Pa. Cons. Stat. § 3701(a)(1)(i)-(iii).[5]  The robbery statute is "obviously divisible," *United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013), and the versions of the offense set forth in subsections (i) and (ii) qualify as crimes of violence for purposes of the career offender guideline because, at a minimum, they "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).  A conviction under subsection (i) or (ii) of the robbery statute requires that the defendant either inflicted or threatened "serious bodily injury," a term defined elsewhere to mean "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or

---

[4] Although the Court need not decide the issue, the Government's argument is persuasive. Demanding money from a victim at gunpoint is robbery under 18 Pa. Cons. Stat. § 3701(a)(1)(ii). *See Commonwealth v. Valentine*, 101 A.3d 801 (Pa. Super. Ct. 2014) (holding evidence that the defendant pointed a handgun at his victim and demanded money, threatening to shoot her, was sufficient to support defendant's conviction for robbery under § 3701(a)(1)(ii)); *Commonwealth v. Jannett*, 58 F.3d 818, 822 (Pa. Super. Ct. 2012) (holding evidence that the defendant "walked into three separate banks, handed the tellers notes demanding money and stating he had a gun, and . . . received cash from each bank" supported a robbery conviction under § 3701(a)(1)(ii)).  As the Government notes, the overt act charged thus corresponds to the criminal objective of robbery, not burglary.

[5] The statute also included subsections (iv) and (v), but both of these additional subsections are inapplicable, as neither of them is a first-degree felony.  *See* 18 Pa. Cons. Stat. § 3701(b).

protracted loss or impairment of the function of any bodily member or organ." 18 Pa. Cons. Stat. § 2301. Given the degree of harm required, it is apparent a conviction under subsection (i) or (ii) requires the use or threatened use of "physical force" within the meaning of the career offender guideline, i.e., "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (construing the phrase "physical force" within the definition of a "violent felony" under the Armed Career Criminal Act (ACCA));[6] *United States v. Horton*, 461 F. App'x 179, 184 (3d Cir. 2012) (holding a statute prohibiting purposely or knowingly causing or attempting to cause significant bodily injury to another required "the use of force sufficient to cause physical pain or injury" and therefore had as an element the use, attempted use, or threatened use of physical force); *De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011) (holding a conviction under a domestic battery statute prohibiting intentionally causing bodily harm "entail[ed] physical force" in that "some sort of physical pain or damage to the body . . . is required to convict" (citation and internal quotation marks omitted)).[7]

---

[6] As the Third Circuit has recognized, "[t]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other." *United States v. Marrero*, 743 F.3d 389, 394 n.2 (3d Cir. 2014) (citation omitted); *see also United States v. Horton*, 461 F. App'x 179, 184 (3d Cir. 2012) (holding "physical force" has the same meaning under the career offender guideline as under the ACCA).

[7] A conviction under subsection (i) or (ii) also likely qualifies as a crime of violence under the so-called "residual clause" of the career offender guideline (§ 4B1.2(a)(2)) because such a conviction "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). A conviction under subsection (i) requires the defendant to have actually inflicted serious bodily injury on another and thus necessarily involves conduct presenting a serious risk of physical injury. Threatening, or putting another in fear of, immediate serious bodily injury, as required for a conviction under subsection (ii), likewise appears to present a serious risk of physical injury in that such conduct involves the same kind of risk of violent confrontation that the Supreme Court has held sufficient to come within the ACCA's similarly worded residual clause. *See James v. United States*, 550 U.S. 192, 203-04 (2007) (holding attempted burglary presents a serious potential risk of physical injury because of the possibility of a face-to-face confrontation between the burglar and a third party); *United States v.*

As the Government acknowledges, a violation of subsection (iii) of the robbery statute ("commits or threatens immediately to commit any felony of the first or second degree") may or may not be a crime of violence, depending on the particular felony the defendant committed or threatened to commit in the course of committing a theft. *See Blair*, 734 F.3d at 225-26 (holding robbery convictions under subsection (iii) were convictions for crimes of violence where the charging documents made clear the felony associated with the convictions was aggravated assault, itself a violent felony). In this case, however, it is clear the jury could only have convicted Thompson of conspiracy to commit robbery based on subsection (ii) of the statute because that is the only robbery offense on which the jury was instructed.[8] Specifically, the trial judge instructed the jury that to find Thompson guilty of robbery, it had to find the following two elements: "[f]irst, that the defendant threatened another with immediate serious bodily injury and/or intentionally placed that person in fear of immediate serious bodily injury," and "[s]econd, that the defendant did so in the course of committing a theft." Jury Instructions 59. As noted, in instructing the jury on the conspiracy charge, the trial judge explained that a

---

*Byrd*, 415 F. App'x 437, 443 (3d Cir. 2011) (holding a conviction for robbery with a deadly weapon "necessarily involves conduct that presents a serious potential risk of physical injury to another" (internal quotation marks omitted)); *see also Valentine*, 101 A.3d 801 (holding a robbery conviction under 18 Pa. Cons. Stat. § 3701(a)(1)(ii) requires evidence demonstrating "aggressive actions that threatened the victim's safety" (citation omitted)).

Because the robbery offenses set forth in § 3701(a)(1)(i) and (ii) qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(1) and the residual clause of § 4B1.2(a)(2), the Court need not decide whether these offenses are also crimes of violence because they correspond to (or prohibit a narrower range of conduct than) the generic offense of robbery, an offense specifically enumerated as a crime of violence in Application Note 1 of § 4B1.2. *See Marrero*, 743 F.3d at 399-400 (reaffirming that "offenses listed in Application Note 1 are 'enumerated' for purposes of the crime-of-violence analysis," but holding a conviction only qualifies as an enumerated crime of violence if it constitutes a conviction of the generic form of the enumerated offense).

[8] In addition, as the Government notes, the overt act charged, which the jury was required to find in order to convict Thompson of conspiracy, corresponds to the robbery offense defined in subsection (ii). *See supra* note 4.

conviction for criminal conspiracy required intent to commit a crime and went on to instruct that *"the charges I define* are crimes under our criminal code," *id.* at 54 (emphasis added), thereby limiting the universe of crimes that could be the object of the conspiracy. Thus, because the judge defined the crime of robbery solely as a violation of subsection (ii) of the statute, insofar as the jury convicted Thompson of conspiracy to commit robbery, it must have convicted him of conspiring to violate subsection (ii), a crime of violence.[9]

The Pennsylvania burglary statute in effect at the time of Thompson's criminal conspiracy conviction provided "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa. Cons. Stat. § 3502(a). The statute defined the term "occupied

---

[9] The fact that the trial court incorporated the definitions of the other crimes charged into its instruction on the conspiracy count distinguishes this case from *United States v. Tucker*, 703 F.3d 205 (3d Cir. 2012), in which the Third Circuit rejected the Government's effort to establish the basis of a defendant's prior conspiracy conviction by reference to jury instructions on other charges in the same case. In *Tucker*, the defendant had been charged in state court with three drug-related offenses—"possession of a controlled dangerous substance ('crack cocaine marijuana'), . . . possession of a controlled dangerous substance with intent to deliver ('PWID') ('crack cocaine, marijuana'), . . . and . . . conspiracy to 'sell drugs'"—but was convicted of only simple possession and conspiracy. *Id.* at 210-11. Although the Bills of Information for the possession and PWID charges identified two controlled substances—crack cocaine and marijuana—the jury instruction on both counts mentioned only cocaine. *See id.* at 212. The instructions on the conspiracy charge were not similarly limited. Rather, the trial court instructed the jury that the object of the conspiracy was to "sell drugs" and that the overt act was "[p]ossessing drugs with the intent to deliver them" without mentioning cocaine or equating the overt act with the separately charged PWID offense. *See id.* at 211, 213. In these circumstances, where "neither the conspiracy Bill nor the conspiracy instructions incorporated the separate PWID charge," the Court of Appeals found the jury was not required to treat the separate PWID charge as the overt act but "could legally have found the overt act to be possession of marijuana with the intent to deliver." *Id.* at 213. Here, in contrast, the trial court's conspiracy instruction did incorporate the definitions of the other crimes charged. *See* Jury Instructions 54 (explaining the first element of conspiracy is "that there was intent to commit a crime and I instruct you that the charges I define are crimes under our criminal code").

10

structure" to mean "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." *Id.* § 3501. Like the Pennsylvania robbery statute, the former burglary statute was divisible in that it prohibited entry of a building *or* an occupied structure. *See Descamps*, 133 S. Ct. at 2284 (characterizing as divisible a burglary statute prohibiting entry of an automobile as well as a building). The statute also defined first-degree burglary as a burglary in which either the building, structure, or portion entered was adapted for overnight accommodation or an individual was present at the time of entry (or both). *See* 18 Pa. Cons. Stat. § 3502(c); *Commonwealth v. Graham*, 9 A.3d 196, 198 n.3 (Pa. 2010); *Commonwealth v. Waters*, 988 A.2d 681, 683 (Pa. Super. Ct. 2009). Because Thompson was charged with first-degree burglary and was convicted of first-degree criminal conspiracy, the Court need only consider whether first-degree burglary is a crime of violence.[10]

First-degree burglary does not have as an element the use, attempted use, or threatened use of physical force against the person of another; therefore, to qualify as a crime of violence, the offense must either correspond to (or cover a narrower range of conduct than) the generic offense of "burglary of a dwelling"[11] or "otherwise involve[] conduct that presents a serious risk

---

[10] The jury instructions show the jury was charged only on first-degree burglary. *See* Jury Instructions 58 (instructing that to convict Thompson of burglary, the jury would have to find Thompson "entered a certain place" and "the place was an occupied structure," defined as "any structure or place adapted for overnight accommodation of persons").

[11] The Third Circuit has held the Pennsylvania burglary statute is broader than the generic offense of burglary because it is not limited to the unlawful entry of buildings and structures, but also encompasses the unlawful entry of a vehicle adapted for overnight accommodation or for business or a place adapted for carrying on business, which may not be an enclosed structure. *See United States v. Bennett*, 100 F.3d 1105, 1109 (3d Cir. 1996). Although the offense of first-degree burglary is defined more narrowly, it is still broader than the generic offense of burglary of a dwelling because it includes the unlawful entry of a place not adapted for overnight

of physical injury to another." U.S.S.G. § 4B1.2(a)(2). To qualify as a crime of violence under the latter option (the so-called "residual clause" in § 4B1.2(a)(2)), "the crime in question must (1) present a serious potential risk of injury *and* (2) be roughly similar, in kind as well as degree of risk posed, to the examples [of burglary, arson, extortion, or use of explosives] themselves." *United States v. Marrero*, 743 F.3d 389, 394-95 (3d Cir. 2014) (alteration in original) (citation and internal quotation marks omitted). Under the Supreme Court's decision in *James v. United States*, 550 U.S. 192 (2007), the offense of first-degree burglary satisfies this test.

In *James*, the Supreme Court considered whether a Florida conviction for attempted burglary was a violent felony under the residual clause of the similarly worded ACCA.[12] The burglary statute in question defined the offense of burglary as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." 550 U.S. at 197 (citation omitted). A conviction for attempted burglary required "an overt act directed toward entering or remaining in a structure or conveyance." *Id.* at 202 (citation and internal quotation marks omitted). To determine whether attempted burglary was encompassed by the residual clause, the Court evaluated "whether the risk posed by attempted burglary [wa]s

---

accommodation so long as a person is present at the time of entry. As a result, first-degree burglary does not appear to correspond to the enumerated offense of burglary of a dwelling.

[12] Under the ACCA, a violent felony includes any crime punishable by imprisonment for a term exceeding one year that "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(1)(B)(ii) (emphasis added). Unlike the career offender guideline, the ACCA does not specifically include attempts and conspiracies to commit a violent felony in the definition of a violent felony; hence, the attempted burglary conviction in *James* could be counted as a prior conviction for a violent felony only if the attempt offense came within the residual clause. Because this case concerns the career offender guideline rather than the ACCA, so long as Pennsylvania first-degree burglary qualifies as a crime of violence, conspiracy to commit first-degree burglary qualifies too. See U.S.S.G. § 4B1.2 cmt. n.1.

comparable to that posed by its closest analog among the enumerated offenses—[i.e., completed burglary]." *Id.* at 203. Recognizing that the main risk of burglary arises "from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate," the Court concluded attempted burglary poses the same kind of risk of violent confrontation as the completed offense, as it is just as likely an innocent party will appear on the scene "before the defendant succeeds in breaking in as after." *Id.* at 203-04. The Court thus concluded the defendant's Florida conviction for attempted burglary was a conviction for a violent felony under the ACCA's residual clause. *See id.* at 209.

The offense of first-degree burglary under Pennsylvania law also poses a risk of confrontation comparable to that presented by a generic burglary or an attempted burglary under Florida law because the Pennsylvania first-degree offense is limited to burglary scenarios posing the greatest risk that a third party will be present. As the Pennsylvania Supreme Court has recognized, by "provid[ing] for first-degree felony grading for structures in which a victim is actually present," the Legislature "clearly recognized and accounted for the greater propensity for harm in actual-presence scenarios." *Graham*, 9 A.3d at 203. Likewise, the grading of burglaries of structures adapted for overnight accommodation as first-degree felonies recognizes that such burglaries "increase[] the risk of injury or death to persons involved." *Id.* at 199 (quoting approvingly *Commonwealth v. Graham*, 949 A.3d 939, 945-56 (Pa. Super. Ct. 2008) (Bender, J., concurring)). This Court therefore concludes that first-degree burglary under Pennsylvania law is a crime of violence under the residual clause of the career offender guideline and that, insofar as Thompson's first-degree criminal conspiracy conviction was for conspiracy to commit first-degree burglary, it is a conviction for a crime of violence.

As the Government notes, the verdict report in Thompson's 2004 criminal case shows his criminal conspiracy conviction was for conspiracy to commit either first-degree robbery or first-degree burglary. Because both of these underlying criminal objectives, as charged in this case, are crimes of violence, Thompson's criminal conspiracy conviction is also necessarily a conviction of a crime of violence, thus qualifying Thompson as a career offender under U.S.S.G. § 4B1.1. Accordingly, Thompson's objection to his classification as a career offender is overruled.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez   
Juan R. Sánchez, J.
