IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 12-418-5 |
| v. | : | |
| | : | CIVIL ACTION |
| FRANK THOMPSON | : | NO. 17-2381 |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                               **January 5, 2023**

On May 24, 2017, Defendant Frank Thompson filed a Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his sentence, which was supplemented by a counseled § 2255 Motion filed on March 29, 2019.  Because there was no error in the admission of the evidence upon which Thompson premises his claims for relief under § 2255, his motion shall be denied without a hearing.

## FACTUAL BACKGROUND[1]

Thompson was arrested along with seven others on July 18, 2012 and charged with conspiracy to commit Hobbs Act robbery, attempted robbery, conspiracy, attempt to possess with the intent to distribute five kilograms or more of cocaine, being a felon in possession of a firearm, carrying a firearm during and in relation to a crime of violence/drug trafficking crime, and aiding and abetting.  Crim. Compl., ECF No. 1.  These charges arose out of an aborted group plan to rob

---

[1] Most of the facts outlined in this Memorandum are, unless otherwise noted, taken from the Not-Precedential Opinion issued in this matter by the Third Circuit Court of Appeals. *United States v. Thompson,* No. 14-4512, 639 F. App'x 154 (3d Cir. May 5, 2016).

a "stash" house in Philadelphia.[2]   Following an 8-day trial, Thompson and five of his co-defendants[3] were convicted of most of the above charges on May 22, 2013.[4]   Thompson was sentenced to a total term of 252 months' imprisonment, a ten-year period of supervised release, a $1,000 fine, and a special assessment of $500 on November 14, 2014.   J., 1-2. ECF No. 479.   Thompson appealed[5] but his conviction and sentence were upheld by the Third Circuit Court of Appeals on May 27, 2016.[6]

---

[2]   Planning for the robbery began in June 2012 when a confidential informant sought help from Thompson's co-defendant Robert Whitfield in reaching a mutual acquaintance with an invitation to rob a "stash house."   Whitfield sought to take the job himself in lieu of the mutual acquaintance, and the informant put Whitfield in touch with the informant's "uncle," who was in reality an Agent with the Bureau of Alcohol, Tobacco and Firearms (ATF).   Whitfield and the agent met on several occasions to discuss the planned robbery and Whitfield recruited the various defendants in this case, including Thompson, to participate.   On July 18, 2012, Whitfield, Thompson and the six other defendants met the agent at a Hilton Hotel parking lot where the agent advised he expected there to be ten kilograms of cocaine and two armed individuals inside the house, one of whom would be armed with a pistol and the other who would be within reach of an assault-style weapon. After asking if anyone had any qualms about participating in the plan and hearing none, the group then proceeded to a junkyard where the agent purportedly had a van ready for use in the robbery. At the junkyard, as the group made final preparations for the crime, putting on gloves and inspecting the firearms to be used, they were surrounded by law enforcement agents and arrested.

[3]   Three of Thompson's co-defendants, Najee Murray, Lafayette Rawls and Jamie Dales, pled guilty prior to the case going to trial.   639 F. App'x at 155, n.1.

[4]   Thompson and Kareem Long were both acquitted at trial on the charge of felon in possession of a firearm.   639 F. App'x at 155, n.2.   The jury returned a guilty verdict on all of the remaining Counts.

[5]   Thompson's appeal challenged the sufficiency of the evidence presented against him at trial to support his convictions on the Hobbs Act and cocaine possession conspiracy charges, and the correctness of the District Court's denial of his motions for judgment of acquittal and for leave to conduct discovery into his claim for selective enforcement.   630 F. App'x at 156.

[6]   This is the date on which the Third Circuit's Certified Copy of its Order affirming the District Court's Judgment of December 5, 2014 was issued in lieu of a formal mandate.   Judgment of USCA., ECF No. 569.

On May 24, 2017, Thompson filed a pro se Motion for Vacation of Conviction and Sentence Pursuant to 28 U.S.C. § 2255 "based upon violations of his Fifth Amendment right to due process of law and Sixth Amendment right to effective assistance of counsel." Pet. Mot. for Vacation of Conviction and Sent. 1, ECF No. 618.  Several weeks later on June 19, 2017, Thompson re-filed this Pro Se § 2255 Motion using the Court's standard form.  Thompson sought habeas relief based upon three arguments: (1) his Fifth Amendment right to due process of law was violated by the Government's alleged outrageous conduct in initiating the "fake stash-house scheme;" (2) his counsel was ineffective on appeal by failing to argue, "under Fed. R. Evid. 404(b)" that evidence of his text messages and his "prior bad acts" of "allegedly robbing dice games in the past" should not have been admitted at trial; and (3) his appellate counsel was ineffective in failing to argue that the district court erred in denying his motion for judgment of acquittal.  Pet's. Mem. Law Sup. § 2255 Mot. 9-22, ECF No. 629.  Counsel was appointed to represent Thompson on May 1, 2018.  Thereafter, a counseled petition and supporting brief were filed clarifying and more thoroughly addressing the grounds raised in Thompson's pro se filings.  As presently framed, Thompson claims are:

> (1)  Defense counsel was ineffective in failing to move to strike and/or seek a limiting instruction regarding the other crimes evidence presented by the Government.
>
> (2)  The District Court erred at trial by allowing testimony that recorded statements made by Thompson were references to his prior acts in robbing dice games.
>
> (3)  The District Court erred at trial by failing to *sua sponte* provide a limiting instruction to the jury that alleged references to prior acts by Thompson could only be considered for specific purposes and not for propensity.
>
> (4)  Counsel was ineffective for failing to raise on appeal the District Court's failure to rule on Thompson's motion for a mistrial based on 404(b) evidence being impermissibly referenced.

Pet's. Supp. Mot. Vac., Set Aside, Corr. Sent., 5-9, ECF No. 729.

**LEGAL STANDARDS**

As noted, Thompson is moving under 28 U.S.C. § 2255 to obtain relief from both his conviction and sentence.  Section 2255 authorizes the filing of petitions seeking habeas corpus relief by prisoners "in custody under sentence of a court established by Act of Congress," 28 U.S.C. §2255(a), and authorizes the sentencing court to grant appropriate relief upon finding "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b).

There remains a basic distinction between direct review and collateral review under §2255. *United States v. Addonizio*, 442 U.S. 178, 184 (1979).  In keeping with this distinction, the writ of habeas corpus has historically been regarded as an extraordinary remedy, "a bulwark against convictions that violate 'fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (quoting *Engle v. Isaac*, 456 U.S. 107, 126 (1982)).  "It is well-established that 'to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995)(quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *Id.* "The alleged error must raise a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *Cleary*, 46 F.3d at 311 (quoting *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989), *cert. denied*, 496 U.S. 939 (1990)).  "Moreover, 'in considering a motion to vacate a defendant's sentence, the court must accept the truth of the movant's factual allegations unless

4

they are clearly frivolous on the basis of the existing record.'" *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (quoting *Gov't. of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

While district courts generally have discretion to conduct an evidentiary hearing on § 2255 claims, under subsection (b) of the statute itself, exercise of that discretion is limited.  An evidentiary hearing is dictated "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also, United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).  "This involves a two-pronged inquiry." *United States v. Arrington,* 13 F.4th 331, 334 (3d Cir. 2021). "First, the district court 'must consider as true all appellant's nonfrivolous factual claims.'" *Id.* (quoting *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988)).  "Second, it 'must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show'" any entitlement to relief. *Id.*  Bald assertions and conclusory allegations do not provide sufficient grounds to require an evidentiary hearing on a § 2255 motion. *United States v. Donahue*, 792 F. App'x. 165, 168 (3d Cir. 2019); *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).  If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, an evidentiary hearing is not required. *Willliams v. Beard*, 637 F.3d 195, 211 (3d Cir. 2011).  Hence, where the motion, files and records conclusively show that the movant is not entitled to relief, there is no reason to hold a hearing and courts maintain the discretion to summarily dismiss a § 2255 motion. *United States v. London*, No. 20-1068, 2022 U.S. App. LEXIS 11357 at * 4 (3d Cir. Apr. 27, 2022); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994).

**DISCUSSION**

Thompson premises his motion to vacate, set aside or correct his sentence on two claims of ineffective assistance of counsel and two claims of trial court error, all of which arise out of his own recorded statements about dice games.

The Sixth Amendment guarantees the right to effective trial counsel. *Simon v. Gov't of Virgin Islands*, 929 F.3d 118, 128 (3d Cir. 2019). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Claims for ineffective assistance of counsel have long been analyzed under the two-part framework first set forth in *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland*, 466 U.S. at 687)). The "first prong – constitutional deficiency – is necessarily linked to the practice and expectations of the legal community in that "the defendant 'must show that counsel's performance fell below an objective standard of reasonableness.'" *Gaines v. Sup't. Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022) (citing *Strickland*, 466 U.S. at 688). "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). A useful guide to finding what those prevailing professional norms are and whether counsel's performance was reasonable may be found in the American Bar Association standards and the like. *Id.* at 366-367.

In analyzing the second component (whether the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable), courts must "ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla*, 559 U.S. 366 (quoting *Strickland*, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 944(3d Cir. 2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). This requires a substantial, not just a conceivable likelihood of a different result. *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020); *Cullen v. Pinholster*, 563 U.S. 170, 189, (2011); *Harrington v. Richter*, 562 U.S. 86 (2011). In pursuing this inquiry, "judicial scrutiny of counsel's performance must be highly deferential," . . . with "every effort … made to eliminate the distorting effects of hindsight…and to evaluate the conduct of counsel's performance from counsel's perspective at the time." *Gaines,* 33 F.4th at 712 (quoting *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013)); *Strickland*, 466 U.S. at 689.

Finally, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and thus "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. "Ultimately, the relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Workman*, 915 F.3d at 943(quoting *Strickland*, 466 U.S. at 694).

Thompson asserts his attorney was ineffective in failing to seek to have evidence of his other crimes stricken from the record or requesting that a limiting instruction be given to the jury concerning it. He additionally claims counsel was ineffective in failing to appeal the Court's failure

to rule on his motion for mistrial.[7]  Because ineffectiveness under *Strickland* requires that both prongs of the test be satisfied, "and because it is preferable to avoid passing judgment on counsel's performance when possible,"  it is appropriate to begin the analysis by considering prejudice first. *Cross*, 308 F.3d at 315 (citing *Strickland*, 466 U.S. at 697-98).

The use of evidence of other crimes, wrongs or acts in a criminal trial is governed by Federal Rule of  Evidence 404(b), which provides as follows in relevant part:

> **(1)  Prohibited Uses.**  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> **(2)  Permitted Uses.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

> . . .

It has been said that "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).

Thompson asserts that during the trial, the Government played audio and video recordings of conversations between a number of the defendants (including himself), cooperating witnesses and an undercover agent. In the course of discussing the planned robbery, Thompson can be heard saying "Damn dice game and fucking the niggers out there spoiling you, you got, you got seventeen niggers spoiling you on one ground."  N.T.

---

[7]  Insofar as due process entitles a criminal defendant to the effective assistance of counsel on at least his first appeal as of right, the two-prong standard of *Strickland* also applies to a defendant's claim that his appellate counsel was ineffective.  *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285 (2000) and *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)).

5/16/13, at 4.156.  ECF No. 295.   On re-direct examination of the undercover agent, the

Government asked:

> Q.  When Frank Thompson says: "Damn dice game and fucking the niggers out
> there spoiling you, you got - you got seventeen niggers spoiling you on one
> ground." What did you understand that to mean based on the conversation at that
> point in the meeting on July 18th?
>
> A.  Well that was preceded by Lafayette Rawls mentioning, generally, we've done
> stuff for less, you know, we - we - in terms of the risk and in terms of what - what
> the - what they would receive.  And in response to that, Thompson starts mentioning
> about dice games and stuff in the context of, you know, we've done stuff for less.

Thompson's counsel objected and asked for a side bar conference at which he argued: "My

understanding was the Government is not introducing 404(b) evidence during the course of its case

in chief, the agent has just gone down that road."  *Id.* at 4.157.  While the Government's response

to this argument was indiscernible on the transcript, the Court directed its counsel to move onto

another area and she did so.  *Id.*

     The Court does not find this testimony prejudicial to the defense.  Thompson's comments

about some "damn dice games" are not in and of themselves suggestive of prior wrongful or

criminal activity and the remainder of his remarks are non-sensical.  Even when put into the context

of the conversation regarding the defendants having done "stuff for less," there is nothing to

suggest that the "stuff for less" referred to prior crimes.  By admonishing the prosecutor to move

into another area in her examination, the objection was impliedly sustained and the prosecution

complied.  What's more, this testimony was not elicited in the Government's case in chief nor was

it elicited to show Thompson's bad character.  Instead, it was part of the Government's re-direct

examination intended to rebut defense counsel's attempt to show Thompson was not a willing

participant in the plan to rob the stash house.[8]  While Rule 404(b) prohibits the admission of other crimes, wrongs, or acts to show that a defendant has a propensity to commit criminal acts, if evidence of extrinsic crimes, wrongs or acts is for a permissible material purpose, it *is* admissible under Rule 404(b), subject only to the usual limitations of Fed. R. Evid. 402 and 403.  *Gov't of Virgin Islands v. Archibald*, 987 F.2d 180, 185 (3d Cir. 1993).  Thompson's dice games comment was properly used to show his participation in the group's conversations about the preparations and plan to rob the stash house.  As such, its admission was proper under Rule 404(b)(2).  *See United States v. Bailey*, 840 F.3d 99, 126 (3d Cir. 2016) ("That rule, [404(b)] allows evidence of uncharged past crimes to be admitted if it is not used to establish a defendant's criminal propensity; . . . such evidence 'may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'").

Thompson also moves to set aside and/or vacate his conviction on the basis of the same, "dice games" remarks which arose later in the trial.  On May 20, 2013 (Day 6), in response to a question from the Government's attorney, Thompson's codefendant Lafayette Rawls, was asked what he understood Thompson to mean when he referred to "damn dice games" in the context of the group's conversation.  Rawls opined that he thought Thompson was "showing that he did stuff for less than this, like, robbing dice games."  N.T. 5/20/13, at 6.81 - 6.83. ECF No. 289.[9]

---

[8]  Specifically, Thompson's attorney's cross-examination of the Agent sought to elicit testimony that Thompson was driven to the hotel parking lot by one of the other defendants and he thus did not have a car in which to leave (N.T. 5/16/13, at 4.11 - 4.13); that the reason Thompson went along with the others was because he felt intimidated into participating by everyone else's involvement; (*Id.* at 4.14 - 4.15), and that Thompson didn't say anything to indicate he wished to be a part of the robbery (*Id.* at 4.17 - 4.20).

[9]  Again, Thompson's statements are unintelligible on their face, as it is unclear what he  was referring to aside from some "damn dice games." In the absence of Rawls' "gratuitous volunteering" of information, there is nothing in the transcripts of the trial or of the video recordings made of the defendants at the time of the aborted robbery which were admitted at trial

It is true that Thompson's counsel objected to Rawls' opinion testimony and subsequently moved for a mistrial on that basis.  It is also true the Court took the motion under advisement but never ruled on it.  *Id.* at 6.239 - 6.240.  Rawls' remark was never argued by the prosecutor in her closing argument to the jury regarding why Thompson should be found guilty.  N.T. 5/21/13, at 7.244 - 7.247., ECF No. 292.  However, Thompson's attorney's closing argument again focused his defense on what he claimed was Thompson's mere presence with the others and the requirement that more than mere presence was needed to show Thompson intended to and actively participated in the plan to commit the robbery.  *Id.* at 7.330 - 7.346.  Defense counsel further argued Thompson remained silent and that the Government was endeavoring to use this purported silence as evidence of his guilt.  *Id.* at 7.346.  Thus, in her brief rebuttal closing, the Government's attorney reviewed the various instances where Thompson had made remarks and comments regarding the plan while the group was gathered in the hotel parking lot, including Thompson's recorded statement about dice games.  No mention was made, however, of Rawls' volunteered opinion that Thompson had previously robbed dice games, and Rawls' testimony was therefore an isolated statement.  N.T. 5/22/13, at 8.23 – 8.24, ECF No. 293.  And as the Government points out, prior to giving his interpretation of Thompson's remark, Rawls testified he did not know Thompson, and had never met him before the first time the group of co-defendants had gathered to commit the robbery.  N.T. 5/17/13, at 5.292, 5.312 - 5.313. ECF No. 288.  Thus, it is reasonable to infer the jury "knew Rawls was in no better position to interpret Thompson's statement than it was."  Gov't Resp. Opp. § 2255 Mot. at 16, ECF No. 743.

---

to indicate Thompson was admitting to robbing dice games or that the Government was endeavoring to make such a showing in violation of Rule 404(b).  N.T. 5/18/13, at 6.240.

Undoubtedly, a curative instruction to the jury regarding Thompson's dice games remark would probably have been beneficial and would have obviated the need to consider this argument as a basis for seeking § 2255 relief.   The Court did give a curative jury instruction on how evidence of prior offenses committed by Robert Whitfield and Kareem Long should be considered.   N.T. 5/22/13, at 8.50 – 8.52.   ECF No. 293.   However, at the conclusion of the charge, the Court asked defense counsel if any of them had any objections to the charge as given or would like any additional instructions added.   *Id.* at 8.95.   All of the attorneys, including Thompson's, replied in the negative.   *Id.*

In any event, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."   *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).   While a curative instruction and a ruling on the mistrial motion would have been helpful, the fact that neither was issued does not necessarily dictate that vacatur of Thompson's conviction and sentence are necessary.   Even assuming the jury did not consider Rawls' lack of knowledge of Thompson's past conduct, a reading of the record as a whole again reveals Rawls' interpretation of Thompson's dice games remark was an isolated one made in the course of an 8-day trial which was *not proffered* by the Government but was rather the result of its efforts to counteract Thompson's defense that he did not participate with the other co-defendants in planning the robbery.   As noted earlier, this line of questioning was wholly appropriate to show motive, intent, preparation, plan and knowledge. Moreover, Thompson's dice games remark was only one of several comments he made in the course of the planning meeting and later, which included statements about the van dropping the group members off afterward around their own cars, not having any hesitation about trying to grab the potential victims if necessary, and the suspicious nature of pulling out gloves in the hotel parking lot where there were bound to be security cameras in the lot.   *Id.* at 8.23 – 8.24.

Under these circumstances, the Court finds that any attendant error which may exist in the admission of Rawls' testimony is harmless at most.  The test for harmless error on collateral review is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht,* 507 U.S. at 637; *United States v. Bentley*, 49 F.4th 275, 283 n.9 (3d Cir. 2022) (joining all other circuits that have considered the issue in applying the *Brecht* harmless error standard to § 2255 motions).  Given the stray and isolated nature of Rawls' opinion testimony and considering it in light of the evidence that Rawls did not know and had never previously met Thompson, together with Thompson's other remarks at the meeting, and his decision to decline the Agent's offer to permit anyone who wished to back out to do so, the "substantial and injurious influence" threshold is not met.

**CONCLUSION**

Given that the dice games evidence was proper to rebut Thompson's defense that he was not a willing participant in the robbery conspiracy and to show he knew, intended to, and actively participated in the planning of the robbery, his counsel was not  ineffective in failing to move to strike or seek a limiting instruction regarding this evidence or in failing to appeal the Court's failure to rule on his mistrial motion. And, because Rawls' interpretation of Thompson's recorded statement was an unsolicited response to a legitimate question and an isolated remark in the course of a lengthy trial, any error in the Court's failure to rule on the mistrial motion or issue a limiting instruction was harmless.  Thompson's § 2255 motion to vacate, set aside or correct his sentence is therefore denied.  Further, the Court cannot find that Thompson has made the requisite substantial showing of the denial of a constitutional right nor demonstrated that jurists of reason would find this or the correctness of the Court's procedural findings to be debatable.  There is thus

no basis upon which to issue a Certificate of Appealability. *See generally*, 28 U.S.C. § 2253; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,        C.J.